### Partin, et al. v. American Association, et al.

(Decided December 9, 1913).

#### Appeal from Bell Circuit Court.

1.  Land—Sale of Under Execution—Death of one of the Parties—Revivor.—A sale of land under execution after the death of one of

the defendants and without revivor of the judgment against his heirs, is void as to them.

2. Land—Purchaser Under Execution Sale—Sheriff's Deed—Title.— A purchaser under execution who did not obtain a sheriff's deed for more than twenty years after the sale, when there was nothing on the record to show his purchase, cannot assert title against a bona fide purchaser of land from those having the title of record.

3. Land—Adverse Possession—Boundaries.—In the absence of a marked boundary, there is no adverse possession of a tract of land by an entry on a part of it without title.

O'REAR & WILLIAMS and C. HURST for appellants.

WM. AYRES for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

James B. Partin instituted this suit in the Bell Circuit Court to quiet his title to a tract of 600 acres of land covered by three patents issued in 1870 to W. H. De-Groot, L. H. Thickston, H. B. Merideth and John Carmichael. The Log Mountain Coal, Coke and Timber Company by its answer set up title in it to the land and prayed that its title be quieted. On final hearing the circuit court adjudged in favor of the defendant. The plaintiff appeals.

Both parties claim under the patentees. Partin's claim of title is under a sheriff's deed executed to him in 1896. He did not produce the judgment or any part of the record in which the alleged judgment was rendered, or the execution under which the alleged sale was made. He introduced proof showing that in the spring of 1875, many of the papers and books of the Bell Circuit Court were taken from the clerk's office and burned. He testified that he did the surveying for the patentees for a large quantity of land, and they executed to him a note for $160 therefor, that he sued upon this note about the year 1871, and got judgment; that an execution issued on the judgment in February 1875 which was levied by the sheriff on the three tracts of land in controversy; that the sheriff sold the land and he bought it at the sheriff's sale in February, 1875. The deputy sheriff was also introduced as a witness and testified that he had such an execution in his hands; that he levied it on the land and sold the land for the debt in February, 1875. No other evidence of this sale was offered except this parol testimony and the sheriff's deed made twenty-one years

thereafter. On the other hand the defendant showed that by deeds regularly made in the year 1871 by the other patentees the three tracts all became vested in W. H. De-Groot; these deeds having been duly recorded at the time they were made. W. H. DeGroot died in March, 1873 or about two years before the issual of the execution or the sale thereunder under which Partin purchased. He left surviving him a widow and two children who lived in New York, and there was no effort to show that the judgment had been revived against them, before the execution issued. On the contrary the sheriff's deed recites that the execution was against W. H. DeGroot and others.

The execution sale having been made after the death of W. H. DeGroot and without any revivor of the judgment against his heirs was void as to them and passed no title. (People's Bank of Kentucky's Assignee v. Barbour, etc., 124 Ky., 539). In addition to this, the DeGroot heirs on January 16, 1886, sold the land to bona fide purchasers from whom it passed by regular conveyances to the Log Mountain Coal, Coke and Timber Company; and when these purchasers bought the property there was nothing on the record in any shape to show that it had been sold under the execution. There was such laches on the part of Partin that a court of equity will refuse him its aid as against bona fide purchasers of the property who had no notice of his claim. (Holton v. Alley, 15 R., 529; Brandenburg v. McGuire, 105 Ky., 10).

It is earnestly insisted however for Partin that he was in adverse possession of the land by himself or his tenants for more than fifteen years, and that he should have recovered on this ground. He introduced proof showing that Robert Turner who lived on 50 acres of land adjoining the land in controversy, extended his clearing over on to this land and held it as his tenant. Turner moved there about the year 1875, and died in the year 1885; but there is no proof that there was any marked or well defined boundary to which Turner or his heirs held or claimed, and the proof showed there was in fact no marked boundary. Partin was without title. His purchase under the execution sale being void, there being no revivor of the judgment against the heirs of DeGroot, he was without legal title, and therefore had no constructive possession. There being no marked boundary to which he or his tenant held, there was no adverse possession of the land in controversy outside of the clearings referred to, and the proof fails to satisfy us that

any of these were held in possession continuously for fifteen years. We give some weight to the finding of the chancellor, and on the question of fact we decline to disturb his finding on this matter.

The evidence fails to show any such actual adverse possession of the land as is necessary under the champerty statute.

Judgment affirmed.